IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EVE JOLICOEUR-VASSEUR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 08 C 853 |
| ASSOCIATION OF PROFESSIONAL ) | Magistrate Judge Susan E. Cox |
| FLIGHT ATTENDANTS, a labor ) | |
| organization, and AMERICAN ) | |
| AIRLINES, INC., a Delaware corporation ) | |
| doing business in Illinois. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Eve Jolicoeur-Vasseur ("plaintiff") was employed as a flight attendant for American Airlines, Inc. ("American") for 16 years when, in 2007, a delinquency in her union dues resulted in her termination. Plaintiff then filed suit against both her employer, American, and the union, Association of Professional Flight Attendants ("APFA"). Now before the Court are two motions for summary judgment filed by defendant American [dkt 84] and defendant APFA [dkt 81].

**I.    Facts**

Though many of the facts are outlined in the defendants' Local Rule 56.1 statements, plaintiff disputes most of them. The Court will, thus, directly cite to the deposition transcripts and exhibits where possible.[1]

---

[1] Facts nonetheless taken from the parties' Local Rule 56.1 statements are cited as follows: facts taken from plaintiff's response to APFA's Local Rule 56.1 statements hereinafter cited as PRAPFA ¶ ___ ; facts taken from plaintiff's response to American's Local Rule 56.1 statements hereinafter cited as PRAMER ¶ ___ . Disputed facts are noted in the text.

Plaintiff began working for American as a flight attendant in June 1991. During her employment with American, a collective bargaining agreement ("CBA") was in place between American and APFA that required flight attendants to maintain membership in APFA.[2] The CBA further provided that American could deduct APFA dues from a flight attendant's paycheck.[3] When back dues were owed, however - such as when a flight attendant has no earnings for a pay period but is still on active duty - the CBA provided that dues collection was then APFA's responsibility.[4] Should a flight attendant become delinquent in the payment of dues the CBA provided that,

> [t]he secretary/Treasurer of APFA shall notify the Flight Attendant, in writing, certified mail, return receipt requested, copy to the Vice President-Employee Relations of the Company, that s/he is delinquent in the payment of initiation fee and membership dues, as specified herein and, accordingly, is subject to discharge as an employee of the Company. Such letter shall also notify the Flight Attendant that s/he must remit the required payment within thirty (30) days of the date of the mailing of the notice, or be subject to discharge.[5]

If after the 30 days the delinquency was not remedied, according to the CBA, the President of the APFA was directed to certify to the flight attendant that he or she has "failed to remit payment within the grace period" and is to be discharged.[6]

Starting in 2005, APFA began attempting to notify plaintiff of a membership dues delinquency in the amount of $653.50.[7] The delinquency related to dues owed for several different months between 1999 and 2004.[8] The first "alert letter" APFA sent on September 9, 2005 to a Canadian address it had on file for plaintiff. This letter was sent via registered mail, return receipt

---

[2]Complaint ¶ 10.
[3]Complaint ¶ 10.
[4]CBA Article 31, P; Lukensmeyer Dep. 44.
[5]CBA Aritcle 31, F.1.
[6]CBA Aritcle 31, F.2.
[7]Pl's Dep., Exh. 4.
[8]Pl's Dep., Exh. 4.

requested and was returned unclaimed.[9] A second "alert letter" was not sent until April 5, 2007, to a Chicago address that APFA obtained from American, which plaintiff had listed with American's employee relations department.[10] This letter was also sent via registered mail but no where in the record does it state whether the letter was returned.[11] On May 18, 2007, APFA sent another "alert letter" by certified mail to the same Chicago address and the letter was returned unclaimed.[12]

Then on June 13, 2007, APFA's treasurer, Cathy Lukensmeyer, learned that plaintiff was attending an emergency training only a few miles from Ms. Lukensmeyer's office.[13] Ms. Lukensmeyer, along with her assistant Michael Parker, drove to the location of the training and notified one of the staff that they were there to hand deliver a letter to plaintiff for dues arrearage.[14] A staff member then went into a training session and brought plaintiff out to meet Ms. Lukensmeyer and Mr. Parker.[15]

Ms. Lukensmeyer stated, in her deposition, that she greeted plaintiff and informed her that APFA had been trying to reach her.[16] She then handed plaintiff a copy of the May 18, 2007 "alert letter" explaining that it related to dues arrearage.[17] Ms. Lukensmeyer then asked plaintiff to sign a separate document confirming delivery of the "alert letter" to plaintiff.[18] The document had a signature line for plaintiff, Ms. Lukensmeyer, and a signature line for a "witness" and further provided that by signing, "the flight attendant is not indicating that s/he agrees with the content of

---

[9] PRAPFA ¶13.
[10] Lukensmeyer Decl. ¶3.
[11] Lukensmeyer Decl. ¶3; Pl's Dep., Exh. 5.
[12] Lukensmeyer Decl. ¶3; Pl's Dep., Exh. 6.
[13] Lukensmeyer Dep. 18.
[14] Lukensmeyer Dep. 18-20.
[15] Lukensmeyer Dep. 19.
[16] Lukensmeyer Dep. 22.
[17] Lukensmeyer Dep. 22.
[18] Lukensmeyer Dep. 22.

the letter."[19] Above the signature lines the document read,

> [y]ou have thirty (30) days from today, June 13, 2007, to pay in full or APFA WILL INITIATE PROCEDURES UNDER ARTICLE 31 OF THE COLLECTIVE BARGAINING AGREEMENT ... THAT WILL RESULT IN YOUR DISCHARGE AS A FLIGHT ATTENDANT *UNLESS* YOU SEND APFA $662.50 WITHIN THIRTY (30) DAYS, NO LATER THAN JULY 13, 2007.[20]

Ms. Lukensmeyer testified that plaintiff refused to sign the document, flipped through the pages of the letter, and then stated that she did not owe any money.[21] So Ms. Lukensmeyer told plaintiff that if she would not sign the document, then she would write on the document "refused" and would have Mr. Parker sign it as a witness.[22] Ms. Lukensmeyer then stressed the importance of the issue, gave plaintiff her business card and cell phone number, and told plaintiff to contact her to get the issue resolved.[23] Ms. Lukensmeyer confirmed that plaintiff would be fired if she did not pay the union dues.[24] When asked whether she left a copy of the letter with plaintiff, Ms. Lukensmeyer testified "yes...when I left her, she had the copy of the letter."[25]

Ms. Lukensmeyer testified that plaintiff did not call until a couple of weeks later. When she called, however, plaintiff only left a message without a return phone number.[26] Plaintiff stated in her voicemail that she was not able to be reached and would call back.[27] After that point, Ms. Lukensmeyer testified that the next time she spoke to plaintiff was after her termination.[28]

Plaintiff first outlined her version of what happened on June 13, 2007, in her January 2008

---

[19] Lukensmeyer Dep., Exh 2.
[20] Lukensmeyer Dep., Exh 2.
[21] Lukensmeyer Dep. 22.
[22] Lukensmeyer Dep. 22.
[23] Lukensmeyer Dep. 22-23.
[24] Lukensmeyer Dep. 23.
[25] Lukensmeyer Dep. 25.
[26] Lukensmeyer Dep. 47.
[27] *Id*.
[28] Lukensmeyer Dep. 50.

declaration. There, Plaintiff stated that,

> Ms. Lukensmeyer gave me a multipage document, turned it to the last page and told me to sign it. The last page said that I owed APFA in excess of $600 in union dues, and that I would agree to the termination of my employment with American Airlines.[29]

Plaintiff's further stated in her declaration that,

> I refused to sign the agreement because I was in the middle of a class...and...I did not intend to sign the document without reading it and understanding it. I told her that I did not owe the amount that APFA apparently claimed because APFA was seeking dues for periods when I was on unpaid leaves of absence.[30]

Next is where the parties' versions differ. The factual dispute is whether plaintiff received or kept a copy of the letter from Ms. Lukensmeyer. Plaintiff's declaration provides the following account:

> I asked Ms. Lukensmeyer for a copy of the document. I do not recall her giving it to me. I do not have it in my possession, and it would have been a document that I would have retained. However, when I returned to my class, the room was dark because a video was being shown, and we were advised to leave documents in the room before leaving, for security purposes. I do have her business card.[31]

Then when pressed on this same issue in her deposition, which took place several months later in August 2008, plaintiff testified as follows:

> Q. You're now stating that you can definitely remember that she did not give you the document?
> A. That's correct.
> Q. In January you couldn't remember that, and now in August, eight months later, you're saying that you can remember that?
> A. I did not say that she – I did not say that she did give it to me, ma'am...[32]

---

[29] Pl's Decl. ¶13.
[30] Pl's Decl. ¶14.
[31] Pl's Decl. ¶15.
[32] Pl's Dep. 189.

Plaintiff also testified that up until her termination, she never saw any of the letters that APFA sent listing the time periods when dues were owing.[33] But again, plaintiff also testified that she did understand that the letter Ms. Lukensmeyer gave her on June 13, 2007 was about union dues and that it related to an amount over $600.[34]

Because the CBA provided that a failure to appeal the dues delinquency or to pay the amount owed within 30 days would result in termination, on July 17, 2007, APFA certified plaintiff's delinquency in writing to American.[35] Plaintiff's supervisor at American, Aprille Gordon, was then instructed to send plaintiff a letter informing her of her discharge, done at the request of APFA.[36] Ms. Gordon mailed the letter, dated July 25, 2007, to two addresses found in American's database, both of which were in Illinois.[37] Ms. Gordan sent one letter by Federal Express to 9330 S. Saginaw in Chicago, plaintiff's mother's home. This letter was delivered and signed for by E. Hesley, plaintiff's aunt.[38] The second letter was sent to her sister's home in South Holland, and was also delivered on July 30, 2007.[39] Ms. Gordon also made several attempts to call her with no response.[40] Later, on August 9, 2007, Ms. Gordon met plaintiff at JFK airport where plaintiff was coming in from a flight.[41] There Ms. Gordon referred to the letters that she had sent (there is conflicting testimony as to whether plaintiff admitted at that time to receiving them) and gave her another copy of the same letter.[42] Plaintiff disputed the termination and Ms. Gordon offered to get Ms.

---

[33]Pl's Dep. 205.
[34]Pl's Dep. 181, 206; Pl's Decl. ¶13.
[35]CBA Aritcle 31, F.2; Lukensmeyer Dep., Exh 1.
[36]PRAPFA ¶ 23; Gordon Dep. 9-10.
[37]Gordon Dep. 12.
[38]PRAPFA ¶ 25-26.
[39]PRAPFA ¶ 28.
[40]Gordon Dep. 22.
[41]Gordon Dep. 22.
[42]Gordon Dep. 24; Pl's Dep. 28.

Lukensmeyer on the phone from the union to discuss the issue.[43] Plaintiff then spoke to Ms. Lukensmeyer, offered to pay the dues, but Ms. Lukensmeyer denied her request.[44]

After several attempts to be reinstated to her flight attendant position, on February 8, 2008, plaintiff filed the present action, alleging two counts: (1) breach of duty of fair representation against APFA; and (2) reinstatement pursuant to Federal Rule of Civil Procedure 19(a)(1) against American.

## II.   Standard of Review

To prevail on a motion for summary judgment under Federal Rule of Civil Procedure 56, a party must present evidence that demonstrates the absence of a genuine issue of material fact.[45] The party seeking summary judgment must identify the portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes shows an absence of a genuine issue of material fact.[46] The moving party is not required to disprove the opponent's case but, rather, must establish a lack of evidentiary support for the non-moving party's position.[47] Summary judgment is appropriate where the evidence "'would require a directed verdict for the moving party.'"[48]

## III.  Analysis

There are two motions before the Court. The first motion, filed by APFA, argues that plaintiff filed her claim too late because the six-month limitations period had passed. APFA then contends that even on the merits, plaintiff has failed to show that its actions were "arbitrary, discriminatory,

---

[43] Gordon Dep. 24; Pl's Dep. 28.
[44] Pl's Dep. 34.
[45] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[46] *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp.*, 477 U.S. 324.
[47] *Celotex Corp.*, 477 U.S. at 325.
[48] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986).

or in bad faith," and, therefore, plaintiff cannot make out a claim for breach of the duty of fair representation. APFA asserts that it provided plaintiff with proper notice of her dues delinquency and that just because she refused to read it, there is no basis for claiming that the union was at fault. The second motion, filed by American, argues that American is not a "necessary party" pursuant to Federal Rule of Civil Procedure 19(a)(1), as claimed by plaintiff. American also asserts that it is entitled to summary judgment because plaintiff cannot show that APFA breached its duty and it follows, then, that American did not breach the CBA.

**A.     APFA's Motion For Summary Judgement**

**i.      Six Month Limitations Period**

Relying on the United States Supreme Court case, *DelCostello v. International Brotherhood of Teamsters,* both APFA and plaintiff agree that the applicable statute of limitations is found in section 10(b) of the National Labor Relations Act.[49] Section 10(b) provides for a six-month deadline for reporting unfair labor practices to the National Labor Relations Board and because of the similarity between union fair representation claims and allegations of unfair labor practices, the Supreme Court in *DelCostello* determined it appropriate to govern both types of suits.[50] APFA argues that the limitations period should begin on the date that it told plaintiff via letter that she was discharged, July 30, 2007. Plaintiff would then have had to file her complaint by January 30, 2008. Plaintiff, however, filed her complaint on February 8, 2008. APFA, thus, argues that it was untimely. But plaintiff claims that she did not receive or see the letters sent to the two addresses in Chicago, which were delivered on July 30, 2007. She believes, therefore, that the limitations period does not

---

[49] 462 U.S. 151 (1983); *see also United Independent Flight Officers, Inc. v. United Air Lines, Inc.,* 756 F.2d 1262, 1269 (7th Cir. 1985)(holding that the six-month statute of limitations period found in section 10(b) of the National Labor Relations Act applied where the claim was based on the Railway Labor Act).
[50] *DelCostello,* 462 U.S. at 169-70.

begin until the date that APFA's counsel confirmed - with her counsel - that notice was never sent to plaintiff's "official mailing address as contained in American's database," though plaintiff does not specify when, exactly, this happened.

So the issue is, when did plaintiff's claim accrue as to the alleged breach of duty. In many cases, the act constituting the violation is the date the union fails to pursue a grievance.[51] Here, no grievance was filed. The parties cite to the general rule that "the limitations period begins to run '... when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation].'"[52] In other words, the standard requires plaintiff to show that even with the exercise of reasonable diligence she could not have known of the alleged injury.[53] The question here, then, is whether the plaintiff "should have discovered" within the six-months preceding the time this action was brought, in the exercise of reasonable diligence, that APFA gave notice of her termination and "that no further action would be taken..."[54]

Plaintiff barely responds to this argument. Plaintiff simply states that she was not aware of American and APFA's "collusion" in failing to giver her proper notice of the dues delinquency and her appeal rights. APFA, however, asserts that the limitations period should begin to run not when the discharge actually took effect but, instead, when the employee - in this case plaintiff - was given notice that she was to be discharged. APFA relies on the Seventh Circuit's explanation that "[w]here an egregious decision is made with consequences to follow later, the period runs from the date of the decision's communication, not the date of the consequences, 'because on that date the employees

---

[51] *See Christiansen v. APV Crepaco, Inc*., 178 F.3d 910, 910 (7th Cir. 1999).
[52] *Metz v. Tootsie Roll Ind., Inc.,* 715 F.2d 299, 304 (7th Cir. 1983).
[53] *Cathedral of Joy Baptist Church v. Village of Hazel Crest,* 22 F.3d 713, 714 (7th Cir. 1994).
[54] *See Chapple v. Nat'l Starch & Chem. Co.,* 178 F.3d 501, 505 (7th Cir. 1999)(noting when the statute of limitations begins to run).

know or could discover that they have a potential claim.'"⁵⁵

APFA further relies on the general rule in termination-of-employment cases where courts have ruled that the limitations period begins to run when the employee is given notice that he or she will be discharged, not when the employee's discharge actually takes effect. For example, APFA cites to a civil rights action where a teacher was denied tenure and, as an inevitable result, terminated.⁵⁶ In denial of tenure cases, the United States Supreme Court has held that the proper focus for purposes of the statute of limitations is upon the time of the discriminatory acts, "'not the time at which the consequences of the acts become most painful.'"⁵⁷ Relating that standard to this case, APFA contends that plaintiff should have received the information that she was - or would be- terminated long before August 9, 2007, when Ms. Gordon personally told plaintiff that she was discharged.

Though APFA does not emphasize this point, it mentions that plaintiff was aware, beginning on June 13, 2007, that there was an issue regarding her dues status and that the problem could result in her termination. Plaintiff stated this point in her declaration.⁵⁸ If nothing else, this fact merely supports the claim that plaintiff knew, even before July 30, 2007, that she was at risk of being terminated and should pursue a remedy.

Finally, APFA points to an October 2006 change of address form (forms which are kept in each employee's personnel file) where plaintiff listed her mother's home, at 9330 S. Saginaw in Chicago, as her permanent residence.⁵⁹ APFA argues that because that was her most recent personal

---

⁵⁵*Martin v. Youngstown Sheet & Tube Co.,* 911 F.2d 1239, 1246 (7th Cir. 1990)(quoting *Bonds v. Coca-Cola Co.,* 806 F.2d 1324, 1326 (7th Cir. 1986).

⁵⁶*Delaware State College v. Ricks,* 449 U.S. 250, 257 (1980)(quoting *Abramson v. University of Hawaii,* 594 F.2d 202, 209 (9th Cir. 1979).

⁵⁷*Delaware State College,* 449 U.S. at 257.

⁵⁸Pl's Decl., ¶13.

⁵⁹Pl's Dep. Exh 11.

information form, and because that was the address used to send her the July 25, 2007 termination letter, in the exercise of reasonable diligence she *should have known* of the letter when it was received on July 30, 2007.

On this point, plaintiff argues that APFA was at fault for failing to send her termination letter to the correct address. Though she asserts this argument in response to several claims, we will address it here. APFA contends this argument to be a "red herring." First, APFA notes that flight attendants are responsible for updating their addresses on multiple databases: one for employee benefits and payroll called "Jetnet" and another called DECS that American uses to pull information on flight attendants, such as contact information.[60] Plaintiff contends that the records show in September 2005 she updated her address to 1003 Hyman, an address in the Montreal Suburbs, and that this address should have been used.

But as APFA notes, plaintiff has been less than clear on this point. In her complaint, plaintiff claimed that she "notified the Union of her correct mailing address no later than November 2004."[61] In response to interrogatory questions from both defendants asking for dates when plaintiff notified them of changes to her mailing address, plaintiff responded that in November 2004, she used the webpage "aa.jetnet" to change her address and personal information.[62] The discrepancy becomes apparent, however, when in her deposition plaintiff testified that she did not live at the 1003 Hyman address until July 2005.[63] She next testified that in August 2005 she called an unnamed person at the union and gave that person this new address.[64] But when asked why her interrogatory answers did

---

[60] Gordon Dep. 12; Lukensmeyer Dep. 13-14.
[61] Complaint ¶ 27.
[62] Pl's Dep. Exh 2 (question 7).
[63] Pl's Dep. 135.
[64] Pl's Dep.

not mention this phone call, plaintiff responded,

> A: It's not that - I didn't make an issue of it. To me, I notify them. I did - I did what I was supposed to do. It never like - I guess in the court of law, whatever, it has to be clear and so on and so forth, so I just didn't acknowledge - you have to - to say - I don't know how to explain it, but I notified them, and it's for - under circumstances and so on and so forth that I took that step to do that.[65]

Then there is a "personal information update" form that plaintiff acknowledged that she filled out - signed by her on October 10, 2006 - and submitted to the DECS database.[66] It is this most recent form in American's files that lists the 9330 S. Saginaw address as her permanent residence *and* as her mailing address, not the Montreal address that she now claims she moved to in 2005 and that American and APFA should have used when sending correspondence.[67]

Plaintiff's inconsistent explanation only supports American's use of the 9330 S. Saginaw address to send her termination letter. That was the address that she listed herself - only one year prior - in the DECS database. So despite plaintiff's apparent confusion, we agree with APFA that the assertion that defendants intentionally disregarded plaintiff's correct mailing address is unavailing.

To return to the statute of limitations question, though we cannot accept plaintiff's position that the accrual date was after plaintiff's counsel contacted American, we also do not believe it was APFA's proposed date of July 30, 2007. If plaintiff only claimed that APFA's breach was its failure to provide notice, that date would be applicable. But plaintiff also claims that APFA's breach was its refusal to reverse its decision.[68] To review, when APFA certified plaintiff's delinquency to

---

[65] Pl's Dep. 144.
[66] Pl's Dep. Exh 11.
[67] Pl's Dep. Exh 11.
[68] Pl's Compl. ¶33(d).

American, Ms. Gordon sent plaintiff a discharge letter dated July 25, which was then signed for on July 30, 2007.[69] This letter informed plaintiff that she would be terminated effective 14 days from the date of the letter but that if she disputed the application of Article 31, she could submit a request for review in writing within 7 days.[70] Though she did not take any action, she still had the opportunity to file a grievance at this point in time. This appears, however, to be the last possibility for plaintiff to contest APFA's action (applying this date would still put plaintiff's filing date after the six months limitation period, but it would fall on February 6 instead of January 30, 2008).

Then, on August 9, 2007, plaintiff was personally informed that she was discharged. On that day, plaintiff called Ms. Lukensmeyer, disputed the charges, and attempted to pay the dues arrearage in an effort to be reinstated. Plaintiff admits that Ms. Lukensmeyer informed her that it was too late.[71] So there is no dispute that on this date APFA's decision was final.[72] Even though plaintiff initiated calls to APFA thereafter, plaintiff had clearly been told that her case was not being pursued and that the grievance period had passed. This date could also, therefore, be considered the date when plaintiff discovered, or should have discovered, the acts constituting the alleged breach of "refusing to reverse its decision...," thus, setting the accrual date.[73]

APFA, nonetheless, argues that because the standard includes "or in the exercise of reasonable diligence should have discovered," the accrual date far precedes August 9, 2007 because plaintiff should have known, before she was confronted by Ms. Gordon, that her grievance period had passed. Though we agree that the accrual date is arguably before plaintiff was told in person that

---

[69] CBA Aritcle 31, F.2; Lukensmeyer Dep., Exh 1; PRAPFA ¶ 23; Gordon Dep. 9-10.
[70] Gordon Decl., Exh 1.
[71] Pl's Dep. 209.
[72] Pl's Dep. 209; Lukensmeyer Dep., Exhs 12-14.
[73] Pl's Compl. ¶33(d); *see also Steffens,* 797 F.2d at 446.

she was discharged, taking the most conservative approach to the complaint - which we are required to do to ensure that all inferences are drawn in plaintiff's favor - we nonetheless find that August 9, 2007 is the more appropriate date to begin the accrual of the limitations period. It is this date that plaintiff was, without any question, informed that APFA would not reverse its decision or pursue a grievance.[74] Plaintiff's complaint was thus filed within the six-month limitations period.

**ii.   Duty of Fair Representation**

APFA next argues that plaintiff cannot make out a claim for breach of the duty of fair representation because she failed to show that APFA's actions in requesting her discharge were "arbitrary, discriminatory, or in bad faith." Plaintiff's principal response is that a fact question remains as to whether APFA breached its duty because even though she had updated her address, APFA sent certain dues delinquency notices to old addresses. Plaintiff then mentions (because there is a lack of any argument on this point) that despite her meeting with Ms. Lukensmeyer on June 13, 2007, she never received a copy of the dues delinquency notice.

The Railway Labor Act ("RLA") "affords an employee an implied right of action against his union for breach of the duty of fair representation."[75] In other words, the RLA imposes on the collective bargaining representative a duty to fairly represent all the union members.[76] To show a breach of duty of fair representation, an employee must show "'substantial evidence of fraud, deceitful action, or dishonest conduct.'"[77] If the employee believes that the employer's actions also somehow contributed to the union's breach, the employee can assert a breach of the collective

---

[74]*See Sosbe v. Delco Electronics Div. of General Motors Corp.,* 830 F.2d 83, 87 (7th Cir. 1987)(claim accrued when plaintiff was informed that the union would not pursue her grievance).
[75]*Steffens v. Brotherhood of Ry,* 797 F.2d 442, 445 (7th Cir. 1986).
[76]*Steffens,* 797 F.2d at 445.
[77]*Crusos v. United Transp. Union, Local 1201,* 786 F.2d 970, 973 (7th Cir. 1986)(quoting *Humphrey v. Moore,* 375 U.S. 335, 348 (1964)).

bargaining agreement against the employer as well. (But in a RLA case, unlike a suit brought under the Labor Management Relations Act, the plaintiff may not bring a claim against the employer under section 301 because there is no corresponding jurisdictional base. Instead the employer is simply joined as a party in the duty of fair representation action.).[78] This dual claim against the employer and the union is common because, ordinarily, an employee is first required to exhaust grievance remedies provided for in the collective bargaining agreement.[79] These suits are often considered hybrids, but the case the employee must prove is the same whether he or she sues one, the other, or both.[80]

Here, however, plaintiff has not claimed that American breached the CBA. In her complaint, plaintiff alleges that "[a]s required by the CBA, American terminated [plaintiff'] employment because APFA requested it."[81] Plaintiff's deposition testimony also supports this point when she agreed that American, by terminating her employment, was "doing what it was required to do under the agreement between APFA and American."[82] Plaintiff's assertion, then, that this is a hybrid claim, which she for the first time argues in her response to APFA's motion, is simply not true. We will, therefore, proceed with this allegation as it is found in the complaint, against only APFA.

As we have addressed above, we do not find that APFA intentionally disregarded plaintiff's correct mailing address. We also agree with APFA that whether APFA erred in sending dues delinquency notices on September 5, 2005, April 7, 2007 and May 18, 2007, is of no import. The addresses used to send those notices are irrelevant because APFA does not rely on those failed

---

[78] *Steffens,* 797 F.2d at 445, fn 2.
[79] *DelCostello,* 462 U.S. at 163-64.
[80] *Id.* at 165; *but see Steffens,* 797 F.2d at 445, fn 2 (noting that suits under the RLA are not "true" hybrid actions).
[81] Pl's Compl. ¶38.
[82] Pl's Dep. 39.

attempts. APFA, instead, claims that it went beyond the requirements outlined in Article 31 of the CBA - which requires notice of any delinquent payment in writing sent by certified mail - and provided personal notice to plaintiff on June 13, 2007. It was then that Ms. Lukensmeyer met plaintiff to personally deliver the "alert letter."

This brings us to plaintiff's contention that she was not given a copy of the letter. It should be noted that plaintiff does not quarrel with whether the "alert letter" written by APFA complied with the requirements of the CBA, only that she did not receive it. We agree with APFA that there is no genuine dispute as to whether she was given a copy of the letter. Ms. Lukensmeyer testified that she handed plaintiff a copy of the letter and that when she left, plaintiff had a copy.[83] Plaintiff also stated, in her declaration, that Ms. Lukensmeyer gave her "a multipage document" and that she knew it was about APFA seeking more than $600 in dues because she told Ms. Lukensmeyer she believed that she did not owe that amount.[84] Though plaintiff's declaration also - in the next paragraph - states that she did not recall whether Ms. Lukensmeyer gave her the letter, she nonetheless noted that when she returned to her class the room was dark and that she was advised "to leave documents in the room..."[85]

With this, there little doubt that plaintiff received notice.[86] Whether she kept the letter after meeting with Ms. Lukensmeyer appears to be the question. But it is not a question that goes to whether APFA breached its duty of fair representation and, therefore, it is not a question that affects this motion. To show a breach of the duty of fair representation, plaintiff has to prove that APFA

---

[83] Lukensmeyer Dep. 25.
[84] Pl's Decl. ¶¶13, 14.
[85] Pl's Decl. ¶15.
[86] *Springer v. Durflinger,* 518 F.3d 479, 484 (7th Cir. 2008)(stating that a nonmoving party in a motion for summary judgment must do more than "'show that there is some metaphysical doubt as to the material facts.'").

failed to honor the CBA. As noted above, the CBA only requires that when a flight attendant becomes delinquent in her dues, a certain procedure applies, which includes sending a certified letter to the employee with notification of the delinquency and the option to cure within 30 days.[87] There is no dispute that APFA went beyond that requirement and instead provided personal service of the notice on June 13, 2007. APFA, at that point, had fulfilled its contractual obligation to plaintiff as to notice. In other words, what plaintiff did or did not do with the letter after she received it does not create a question of fact on the breach of duty of fair representation claim.

Neither party, however, acknowledged this: that nowhere in the CBA is there a requirement that an employee read or understand the delinquency notice. There is also no requirement that an employee notify APFA that he or she received the notice. This is, however, the position that plaintiff urges the Court to take. Plaintiff would like us to read into the CBA a requirement that plaintiff be fully apprised of all issues (in this case, her dues delinquency and the grievance procedure) and if, according to her, she was not, then she believes that there is a fact question as to APFA's duty of fair representation. But to take this position would be to read provisions into the CBA that are not there. Plaintiff cannot argue a failure of APFA's duty because she did not read the alert letter or the CBA procedures, just like a careless buyer - who knows the seller's representations are false - cannot cry fraud.[88] To use the more common analogy, much like an ostrich cannot be said to rely on there being no danger in the vicinity, plaintiff cannot claim that APFA was fraudulent, took deceitful action, or engaged in dishonest conduct simply because of her failed actions.[89]

It follows then that plaintiff's additional claims in her complaint fail: that APFA breached

---

[87] CBA Aritcle 31, F.1.
[88] *See Dexter Corp. v. Whittaker Corp.,* 926 F.2d 617, 620 (7th Cir. 1991).
[89] *See Crusos v. United Transp. Union, Local 1201,* 786 F.2d 970, 973 (7th Cir. 1986)(quoting *Humphrey v. Moore,* 375 U.S. 335, 348 (1964)); *see also Dexter Corp.,* 926 F.2d at 620.

its duty by failing to advise her of appeal and grievance rights under the CBA and that APFA refused to reverse its decision. Though plaintiff does not argue these points in response to the motion, and we are therefore not obliged to consider them, for purposes of completeness we will briefly address the additional allegations.[90] First, the letter plaintiff received on June 13, 2007 and the termination letter that followed, on July 30, 2007, both addressed possible grievance actions plaintiff could take. Second, we do not find that APFA violated its duty of fair representation by refusing to reverse its decision to terminate plaintiff.[91] APFA took action as provided for in the CBA, which specifically states that an employee is to be discharged if, after the expiration of the thirty day period, the flight attendant remains delinquent. Plaintiff has not cited, and we do not find, authority to support her claim that APFA should have - after following those requirements - reversed its decision to terminate her employment.

### B.     American's Motion For Summary Judgement

Count two of plaintiff's complaint is against American and alleges that it terminated plaintiff's employment, in accordance with the procedures required by the CBA, because plaintiff was delinquent in her dues. The complaint further alleges that American is joined as a necessary party pursuant to Federal Rule of Civil Procedure 19(a)(1), which permits joinder of a party if complete relief cannot be afforded without that party's presence. Because APFA cannot unilaterally reinstate plaintiff to her position as an American flight attendant, plaintiff argues that American is a necessary party in the litigation.

---

[90] *See Roe-Midgett v. CC Servs., Inc.,* 512 F.3d 865, 876 (7th Cir. 2008)(citing to authority for proposition that an undeveloped argument constitutes waiver); *see also Palmer v. Marion County,* 327 F.3d 588, 597-98 (7th Cir. 2003)(holding that a claim is abandoned when a party fails to delineate the claim in the district court brief in opposition to summary judgment).

[91] Pl's Compl. ¶33(d).

In this motion American argues that first, because APFA did not breach its duty of fair representation, there can be no liability for American. Second, American asserts that plaintiff fails to establish that it is a necessary party because, one, the CBA does not provide for reinstatement and, two, she has a monetary remedy available to her against APFA. Plaintiff cites to one case in a one paragraph response. Plaintiff contends that APFA and American "acted in collusion" to deprive her of her grievance rights and again asserts that both parties deliberately sent correspondence to old addresses.

Even if we were to consider plaintiff's argument that American and APFA colluded to deprive her of her rights under the CBA, American's motion is, nonetheless, granted. Somewhat ironically we find support in the very case cited by plaintiff, *Frandsen v. Brotherhood of Railway*.[92] Like here, in that case the claims against the union were based on the RLA.[93] But that case also included a claim against the employer for collusion.[94] The court distinguished itself from the typical hybrid case where a claim against the employer is brought pursuant to section 301 of the Labor Management Relations Act,[95] stating that where a section 301 case would usually proceed separately from the outcome of the claim against the union, the allegations against a union and employer pursuant to the RLA remain linked.[96] That means if one is dismissed the other claim must also be dismissed.[97] Applying that principle here, if the claim against APFA is dismissed, the claim against American must also be dismissed.[98]

This is of course only relevant to hybrid claims, which we already held is not present in this

---

[92] 601 F.Supp. 941 (S.D. Ill. 1985), *rev'd,* 782 F.2d 674, 684 (7th Cir. 1986).
[93] *Frandsen,* 782 F.2d at 684.
[94] *Frandsen,* 782 F.2d at 684.
[95] 29 U.S.C. §185.
[96] *Frandsen,* 782 F.2d at 684.
[97] *Id.*
[98] *See Frandsen,* 782 F.2d at 684.

case. As stated, plaintiff does not allege collusion in her complaint but, rather, alleges - and testified - that American did what it was required to do when it terminated plaintiff's employment.

We move, therefore, to plaintiff's allegation that American is a necessary party pursuant to Rule 19(a)(1) because only American can reinstate her employment. To determine whether a party is necessary under Rule 19(a), courts consider whether in "the person's absence complete relief cannot be accorded among those already parties..."[99] Because we have already determined that APFA did not breach its duty of fair representation, there is no additional relief that plaintiff could seek, on this complaint, against American.

## IV.   Conclusion

For the foregoing reasons, defendant APFA's motion for summary judgment is granted [dkt 81] and American's motion for summary judgment is granted [dkt 84].

**IT IS SO ORDERED.**

**ENTERED:** February 19, 2010

          **UNITED STATES MAGISTRATE JUDGE**
          Susan E. Cox

---

[99] Fed. R. Civ. Pro. 19(a)(1).